## COMPANIA TRASATLANTICA et al. v. CHARLES PFIZER & CO., Inc. et al.

No. 17535.

United States District Court
E. D. New York.
March 12, 1951.

Hunt, Hill & Betts, John W. Crandall, and Robert M. Donohue, all of New York City, for libelants.

Bigham, Englar, Jones & Houston and Henry N. Longley, New York City, for respondents.

INCH, Chief Judge.

This is an action by Compania Trasatlantica (hereafter called "Trasatlantica"), owner of the steamers Marques de Comillas and Magallanes, and Naviera Aznar Sociedad Anonima (hereafter called "Aznar"), owner of the motor vessel Monte Ayala, against the respondents Charles Pfizer & Company, Inc. (hereafter called "Pfizer"), and Federal Insurance Company, Inc. (hereafter called "Federal"), for general average contributions arising from the stranding of the Monte Ayala near Vigo, Spain, on February 15, 1941.

Many of the material facts have been stipulated for the purposes of trial. It appears that Pfizer purchased two lots, consisting of 1,070 and 340 bags, of tartar, and that it held bills of lading therefor issued by Trasatlantica at Alicante, Spain on January 24 and January 30, 1941, respectively, naming Pfizer as the consignee, and covering through transportation of the shipments from Alicante to New York. Endorsed on the lower left hand corner of the bills of lading was a statement that the cargo was to be carried from Alicante to Vigo on the steamer Monte Ayala and from Vigo to New York on the steamer Marques de Comillas.

On the journey from Alicante to Vigo the Monte Ayala, owned by Azner, went aground in Vigo Bay on the night of February 15, 1941 during a violent storm and remained aground there for approximately three months. Part of the cargo was lost and that which remained arrived at Vigo too late for the sailing of the steamer Marques de Comillas, but was transhipped to New York on the steamer Magallanes, the next vessel of Trasatlantic sailing from Vigo.

The respondents claim that the reason the Monte Ayala went aground was due to

negligence, but a careful consideration of all the evidence indicates to me that this grounding was due to the unusually violent storm, and was not due to the negligence of those in control of the ship.

On May 25, 1941 the Magallanes arrived in New York and discharged 785 bags of tartar out of the 1,070 bag lot and 127 bags out of the 340 bag lot, or a total of 912 bags out of the original shipments of 1,410 bags.

Thereafter Trasatlantica offered delivery of the cargo to Pfizer on condition (1) that Pfizer pay freight on the entire shipment, together with other miscellaneous charges, and (2) that Pfizer execute a general average agreement in the so-called Spanish form which Trasatlantica demanded. Pfizer refused to comply with either condition, and on May 31, 1941 (together with R. J. Prentiss & Company, Inc., another cargo owner, not involved herein), filed in this court a possessory libel against the cargo. Trasatlantica answered the possessory libel and filed a cross-libel. However, the parties agreed that the cargo should be delivered to the cargo owners in exchange for guarantees of payment of the freight and miscellaneous charges and proper contributions in general average. Accordingly, Federal guaranteed that Pfizer would execute a general average agreement in the form required by Trasatlantica if it should be determined that Trasatlantica was entitled to such an agreement. Pfizer, having obtained its cargo, was no longer interested in its possessory libel, and that libel was subsequently dismissed for lack of prosecution.

Nevertheless Trasatlantica continued to press its demand that Pfizer execute the form of bond which it presented, and this matter came before Judge Galston in July 1941 on a motion to dismiss the first cause of action of the cross-libel. It was stipulated that the sole question presented for the court's consideration was "whether or not the cross-libellant (Trasatlantica) was entitled to require as a condition precedent to the delivery of the merchandise involved in this action, that the consignees or owners of the said arrived cargo execute general average bonds in the form attached hereto as Exhibit 'C'", that is, in the particular form demanded by Trasatlantica. Judge Galston, in an opinion dated July 18, 1941 (40 F.Supp. 123, 124), decided that "Clause 14 of the bills of lading is in effect nothing more than an arbitration agreement as to general average", and that "the liquidation should take place in Spain by adjusters, strictly pursuant to the terms of the bills of lading". However, as to the form of the bond demanded by Trasatlantica, he held that it "must be strictly in accordance with the provisions of the bills of lading", and that since (1) some of the provisions therein did not appear explicitly in Clause 14 of the bills of lading, and (2) the bond omitted "reference to the provisions of the York-Antwerp Rules of 1924, according to which Rules the general average is to be calculated, as set forth in the bills of lading", Trasatlantica was not entitled to such specific form of bond. On August 11, 1941 an order was entered striking out the first cause of action and dimissing the cross-libel to that extent with leave to amend. Trasatlantica later filed an amended cross-libel and that case has remained on the calendar of this court up to the present time.

Aznar, as the initial carrier under the through bills of lading, had issued a local bill of lading for the entire cargo in which Trasatlantica appeared both as shipper and consignee, and neither Pfizer nor its shipper were parties to that bill of lading. Since the stranding occurred while the cargo was aboard the Monte Ayala, owned by Aznar, Aznar appointed Correduria General Maritime S. L. of Bilboa, Spain (hereafter called "Correduria") to make an adjustment of the general average in accordance with the Aznar bill of lading. That adjustment consisting of four volumes, partly in English and partly in Spanish, was not completed until July 11, 1944. When the adjustment was completed Trasatlantica did not again move to amend its cross-libel, but instead filed the instant libel in which Aznar was joined as a co-libellant and Federal as a co-respondent.

The present libel alleges the appointment of these Correduria adjusters by Aznar, and the fact that they issued a general average statement at Bilboa, Spain, on August 23, 1944 which sets forth that 79,321 pesetas and 38 centimos are chargeable to Pfizer's cargo and that payment was duly demanded and refused.

The parties have stipulated that Trasatlantica, on completion of the adjustment, paid the above amount to Aznar, and accordingly if any sum is found to be due from respondents it is due to Trasatlantica rather than Aznar.

It is libellants' contention that Pfizer, by virtue of Clause 14 of the Trasatlantic bills of lading, bound itself unconditionally to pay the general average expenses found chargeable to its goods by the Correduria adjusters, and consequently, it and its guarantor, Federal, are foreclosed from questioning the adjustment.

Clause 14, translated into English, reads in part as follows: "14. * * * Pursuant to the right granted by Article 846 of the Spanish Code of Commerce, it is hereby specifically agreed that in cases of general average, liquidation will be made in Barcelona extrajudicially by experts appointed by the shipowner, and it will be made up according to the provisions of the York-Antwerp rules of 1924, numbers one to fifteen (1 to 15) inclusive, and numbers seventeen to twenty-two (17 to 22) inclusive. All parties concerned renounce the provisions of Articles 847, 851 and 865 of the Code of Commerce, and hereby give their approval to the adjustment which in any such cases may be made up by the adjusters in accordance with the above mentioned rules. * * *"

Respondents contend that the general average statement which libellants assert is the award of arbitrators was prepared without respondents' consent or knowledge and by adjusters unknown to them, and further, that it is in conflict with the specific provisions of Clause 14 of the Trasatlantica bills of lading in that (1) the adjustment was prepared and stated in Bilboa rather than Barcelona, Spain, as required by Clause 14 and (2) the adjust-ment was made in accordance with *all* the numbered and lettered York-Antwerp Rules of 1924 rather than only those numbered rules specifically set forth in Clause 14, that is, omitting Rules 16 and 23, and all the lettered rules.

In my judgment this last contention is clearly correct and is sufficient to preclude recovery by libellants in this case. As stated by Judge Galston in the possessory suit, any general average adjustment had to be made strictly in accordance with the terms of the Trasatlantica bills of lading, and, more particularly, in accordance with Clause 14 thereof. It is to be noted that Trasatlantica did not ask Pfizer to execute a general average agreement in accordance with the specific provisions of Clause 14 as called for by Judge Galston's opinion. Instead Trasatlantica appears to have been satisfied to await the outcome of the adjustment made by the Correduria adjusters appointed by Aznar under the Aznar bill of lading and then to seek recovery of the amount charged therein to Pfizer's cargo. Libellants admit that the Aznar bill of lading provided for an adjustment in accordance with *all* the numbered and lettered York-Antwerp Rules of 1924 and that it was not limited to the specific numbered Rules recited in Clause 14 of the Trasatlantic bills of lading, but they say that this was merely a "technical irregularity" which was "harmless, and in any event, immaterial".

As conceded by libellants, it is clear from the depositions of the Correduria adjusters that they prepared their adjustment in accordance with Rule 16 of the 1924 York-Antwerp Rules. (Answers to interrogatories numbered 12, 13, 17 and 23 (a). However, I find it impossible to determine from the depositions, as urged by libellants, that the application of Rule 16 did not in fact affect the amount of the award charged to Pfizer's cargo, and the expert testimony offered by libellants, after I permitted the trial to be reopened for that purpose, does not satisfy me that the Rule did not affect the amount of the award. In this action the burden of proof is on libellants to prove by a fair

220

preponderance of the evidence that they are entitled to the amount claimed in accordance with the exact provisions of Clause 14 of the bills of lading. Since one of the Rules specifically excluded from Clause 14 was in fact applied by the adjusters, the burden is on libellants to show that it did not affect the amount they claim herein. As the record stands any finding on this issue would be a matter of speculation, so that I must conclude libellants have not sustained their burden of proof, and accordingly, the libel must be dismissed.

Submit decree and proposed findings of fact and conclusions of law in accordance herewith.